IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARIAN BROWN,

           Plaintiff,

vs.                                  Case No. 16-1392-SAC

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,[1]

           Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984

---

[1] On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security.

(10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in

substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform

their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On July 27, 2015, administrative law judge (ALJ) Michael D. Mance issued his decision (R. at 15-22).  Plaintiff alleges that she has been disabled since June 23, 2013 (R. at 15).  Plaintiff

4

is insured for disability insurance benefits through December 31, 2017 (R. at 17). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date (R. at 17). At step two, the ALJ found that plaintiff has severe impairments (R. at 17). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 18). After determining plaintiff's RFC (R. at 18), the ALJ found at step four that plaintiff is able to perform past relevant work as a lead cashier (R. at 21). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 21-22).

**III. Did the ALJ err in his consideration of the medical opinion evidence by finding that plaintiff could perform light work?**

The ALJ limited plaintiff to a range of light work, as defined in 20 C.F.R. § 404.1567(b). The regulation states that:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds…a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b) (2017). With a limitation to light work, and other limitations as set forth in the ALJ decision (R.

at 18), the ALJ concluded that plaintiff could perform past relevant work as a lead cashier, defined by the ALJ as work performed at the light exertional level (R. at 21, 47-48).

Plaintiff's treating physician, Dr. Cooke, opined on November 18, 2013 that plaintiff was limited to standing and walking for 4 hours, and sitting for 4 hours in an 8 hour workday. She can sit for 30 minutes and stand for 30 minutes at one time. He further indicated that plaintiff would have to take unscheduled breaks every 30 minutes, and would have to rest for 30 minutes before returning to work (R. at 307-310). On May 15, 2015, Dr. Cooke opined that plaintiff can stand for only 4 hours in an 8 hour workday, but could sit for 6 hours in an 8 hour workday. She can sit for 15 minutes and stand for 30 minutes at one time. He further opined that plaintiff would need to take unscheduled breaks every 15-30 minutes, and would have to rest for 20-30 minutes before returning to work (R. at 411-413).

On March 12, 2014, Dr. Trowbridge, a non-examining consultative physician, reviewed the records in this case. She opined that plaintiff can stand/walk for 4 hours in an 8 hour workday. Dr. Trowbridge gave strong consideration to the opinions of Dr. Cooke, and stated that plaintiff's allegations are generally supported by the medical evidence of record in the file, even though noting that the structural deformity on the

6

film is mild.  Dr. Trowbridge stated that plaintiff's chronic pain symptoms are well documented.  She concluded by stating that the combination of her impairments would limit plaintiff from a full pace of standing and walking for 6 hours in a shift (R. at 59-62).

On May 6, 2014, Dr. Mays, a non-examining consultative physician, also reviewed the records in this case.  He opined that plaintiff could only stand/walk for 2 hours in an 8 hour workday.  Dr. Mays also gave strong consideration to the opinions of Dr. Cooke, and stated that plaintiff's allegations are generally supported by the medical evidence of record in the file, even though noting that the structural deformity on the film is mild.  Dr. Mays also stated that plaintiff's chronic pain symptoms are well documented.  He concluded by stating that the combination of her impairments would limit plaintiff from a full pace of standing and walking for 6 hours in a shift.

The ALJ considered the opinions of Dr. Trowbridge and Dr. May.  However, the ALJ gave little weight to their opinion that plaintiff would not be able to stand/walk for a total of 6 hours in an 8 hour day.  The ALJ indicated that neither the imaging nor the clinical findings demonstrate any evidence of radiculopathy or decreased motor or sensory function, and that plaintiff can walk normally without an assistive device and has good motor strength (R. at 20).  The ALJ also considered the

opinions of Dr. Cooke, but also gave them little weight, as they are not supported by the objective evidence, including his own exam findings, and the MRI findings which showed only mild degenerative changes, with no nerve impingement (R. at 20-21). Thus, the ALJ rejected all of the medical opinion evidence which limited plaintiff to no more than 4 hours of standing/walking in an 8 hour day (Dr. May limited plaintiff to only 2 hours of standing/walking in an 8 hour day; Dr. Trowbridge and Dr. Cooke limited plaintiff to 4 hours of standing/walking in an 8 hour day).

An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculations, or lay opinions.  McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002).  The adjudicator is not free to substitute his own medical opinion for that of a disability claimant's treatment providers and other medical sources.  Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004).

The ALJ gave little weight to the opinions of Dr. Trowbridge and Dr. May because neither the imaging nor the clinical findings demonstrated any evidence of radiculopathy or decreased motor or sensory function.  The ALJ gave little weight to the opinions of Dr. Cooke, the treating physician, because, according to the ALJ, his opinions are not supported by the

objective evidence, including his exam findings, and specifically the MRI findings which showed only mild degenerative changes, with no nerve impairment.

However, both Dr. Trowbridge and Dr. May gave strong consideration to the opinions of Dr. Cooke.  Both of them stated that plaintiff's allegations are generally supported by the medical evidence of record in the file.  They noted that although the degree of structural deformity on film is mild, plaintiff's chronic pain syndrome is well documented (R. at 62-63, 73).  Dr. Cooke also identified plaintiff's clinical findings and objective signs, and then set forth plaintiff's limitations which resulted from her impairments or conditions (R. at 307-310, 411-413).

The ALJ is not a medical expert on identifying the clinical signs typically associated with degenerative disc disease of the lumber and cervical spine, COPD, or osteoporosis (the severe impairments identified by the ALJ, R. at 17).  An ALJ is not entitled to sua sponte render a medical judgment without some type of support for his determination.  The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment.  Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002).

The ALJ in this case made the very same error as the court found in Bolan.  The ALJ is not a medical expert on identifying

9

clinical signs typically associated with degenerative disc disease of the lumbar or cervical spine, COPD, or osteoporosis. Although the ALJ relied on the imaging tests to discount all 3 medical opinions, Dr. Trowbridge and Dr. May specifically found that although the structural deformity on the film is mild, they found that plaintiff's chronic pain syndrome is well documented. Dr. Cooke also noted mild test results, but all three physicians found that plaintiff was limited to no more than 4 hours a day of standing or walking.  The ALJ cited to no authority in support of his proposition that the mild test results provide a legitimate basis for discounting the opinions of all 3 medical sources.  The ALJ cannot sua sponte render a medical judgment without some type of support for this determination.  On the facts of this case, the court finds that the ALJ overstepped his bounds into the province of medicine.  <u>Miller v. Chater</u>, 99 F.3d 972, 977 (10th Cir. 1996).

   The ALJ did not cite to any medical opinion in support of his determination that plaintiff was not limited to standing/walking for only 4 hours in an 8 hour workday, but in allowing her to perform a range of light work.  To be considered capable of performing a full or wide range of light work, you must have the ability to engage in a good deal of walking or standing.  However, an exact correspondence between a medical opinion and the RFC is not required.  In reaching his RFC

10

determination, an ALJ is permitted, and indeed required, to rely on all of the record evidence, including but not limited to medical opinions in the file.  That said, in cases in which the medical opinions appear to conflict with the ALJ's decision regarding the extent of a plaintiff's impairment(s) to the point of posing a serious challenge to the ALJ's RFC assessment, it may be inappropriate for the ALJ to reach an RFC determination without expert medical assistance.  Wells v. Colvin, 727 F.3d 1061, 1071-1072 (10th Cir. 2013) (in Wells, the ALJ rejected 3 medical opinions, finding that they were inconsistent with the other evidence in the file; the court directed the ALJ, on remand, to carefully reconsider whether to adopt the restrictions on plaintiff's RFC detailed in the medical opinions, or determine whether further medical evidence is needed on this issue).

    The court finds, on the facts of this case, that the medical opinions of Dr. Cooke, a treating physician, and Dr. Trowbridge and Dr. May clearly conflict with the ALJ's decision to the point of posing a serious challenge to the ALJ's RFC assessment.  An ALJ may reject a treating or examining physician's opinion outright only on the basis of contradictory medical evidence.  The ALJ cannot substitute his own medical opinion for that of Dr. Cooke, Dr. Trowbridge and Dr. May and conclude that the medical or clinical signs do not support the

functional limitations, particularly in regards to limitations on the ability to stand/walk, found by all 3 physicians.  Other than offering his own opinions, the ALJ offered no evidentiary support for his determination that plaintiff could perform light work and was not limited to standing/walking for only 4 hours in a workday.

The court therefore finds that substantial evidence does not support the ALJ's RFC findings.  This case shall be remanded in order for the ALJ to give further consideration to the opinions of Dr. Cooke, Dr. Trowbridge and Dr. May.  The ALJ should also ascertain whether additional medical evidence should be obtained on this issue.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 23rd day of January 2018, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge